# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

JONATHAN EHRLICH,

        Plaintiff,

    v.

DENNIS P. McINERNEY, ESQ., et al.,

        Defendants.

1:17-cv-879 (NLH/KMW)

**OPINION**

---

**APPEARANCES**:

PETER A. OUDA
PETER A. OUDA, LLC
19 NORTH BRIDGE STREET
SOMERVILLE, NEW JERSEY 08876
    On behalf of Plaintiff

JOHN L. SLIMM
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
15000 MIDLANTIC DRIVE, SUITE 200
P.O. BOX 5429
MOUNT LAUREL, NEW JERSEY 08054
    On behalf of Defendant Dennis P. McInerney

**HILLMAN**, District Judge

    This matter arises from almost a decades' worth of litigation regarding the Estate of Richard D. Ehrlich ("Decedent"). In this federal court action, Plaintiff Jonathan Ehrlich, Decedent's nephew, brings a breach of fiduciary duty claim against Defendant Dennis P. McInerney, the temporary

administrator of the Estate.[1]

Defendant filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). The Court does not find the Rooker-Feldman doctrine precludes this Court from exercising jurisdiction over this matter and thus does not find this matter can be dismissed under Rule 12(b)(1). The Court will, however, grant the motion to dismiss pursuant to Rule 12(b)(6), as the Court finds N.J.S.A. 3B:17-8 and the entire controversy doctrine require dismissal of the breach of fiduciary duty claim against Defendant.

**I.**

The Court takes its facts and procedural posture not from Plaintiff's complaint, but from the various state court decisions preceding and related to this federal case, as a more thorough recitation of the facts and procedural history is necessary.[2]

---

[1]   Plaintiff also brings claims against Re/Max World Class Realty, Thomas W. Sasaki, O'Hara Appraisals, and Martin T. O'Hara. These defendants are not part of this motion to dismiss. In this Opinion, the Court refers to McInerney, the sole moving defendant, as "Defendant" for ease of reference.

[2]   As detailed later in this Opinion, the Court's consideration of these state court decisions is permissible both in considering objections to its exercise of jurisdiction over this matter pursuant to Federal Rule of Civil Procedure 12(b)(1) and in consideration of the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which implicates New Jersey preclusion doctrines.

The following background facts come from the New Jersey Superior Court, Appellate Division ("Appellate Division")'s June 29, 2012 decision, In re Estate of Ehrlich, 47 A.3d 12 (N.J. Super. Ct. App. Div. 2012), certif. denied, 59 A.3d 602 (N.J. 2013), appeal dismissed, 64 A.3d 556 (N.J. 2013). Decedent was a trust and estates attorney in Burlington County, New Jersey. Id. at 13-14. He died on September 21, 2009, with his only next of kin being his nephews, Todd Ehrlich and Plaintiff, and his niece Pamela Venuto. Id. at 14. While Decedent had not had contact with Todd or Pamela for over twenty years, he maintained a close relationship with Plaintiff, who he had told friends was the person to contact if he were to die and was the person to whom he would leave his estate. Id.

Upon learning of Decedent's death, a search for Decedent's will ensued. Id. Plaintiff located a copy of a purported will in a drawer in Decedent's home. Id. On December 17, 2009, Plaintiff filed a complaint seeking to have the purported will admitted to probate. Id. Todd and Pamela objected. Id. Defendant, who had previously been named as Trustee of Decedent's law practice, was appointed as temporary administrator. Id. While Defendant was ordered to inspect Decedent's home, no other document purporting to be Decedent's will was ever located. Id.

The purported will that was recovered provided a specific

bequest of $50,000 to Pamela, a specific bequest of $75,000 to Todd, twenty-five percent of the residuary to pass through a trust to a friend, and seventy-five percent of the residuary to pass to Plaintiff.  Id.  On April 20, 2011, the proffered will was admitted to probate.  Id. at 13.  The court then denied a motion for reconsideration on June 20, 2011.  Id.  The Appellate Division then affirmed, finding the will was properly admitted to probate.  Id. at 19.  While the decision was appealed to the New Jersey Supreme Court, Plaintiff's complaint provides that the matter was settled by the siblings.

On January 18, 2013, Judge Karen L. Suter of the Superior Court of New Jersey, Chancery Division granted Defendant's motion for instructions and to allow a settlement with regard to two actions pending against the Estate arising from Decedent's law practice: IMO Estate of Farias v. Estate of Ehrlich and Farias v. Estate of Ehrlich.  Defendant filed the motion for instructions believing settlement of the matters was in the best interest of the Estate, as he believed the Estate could potentially be liable for more than the settlement amount. Plaintiff opposed the motion, arguing "more information is required before a determination of the propriety of the settlement can be made."  Judge Suter determined Defendant was "acting within his powers as temporary administrator" and thus approved the settlement.  The settlement was thereafter

consummated.

On July 15, 2011, Judge Michael J. Hogan of the Superior Court of New Jersey, Chancery Division approved Defendant's first intermediate account on behalf of the Estate. By a May 23, 2012 Order, Judge Suter denied Plaintiff's motion to vacate the July 15, 2011 court order.[3] Plaintiff appealed the denial of his motion to vacate. In re Estate of Ehrlich, 2013 WL 2476490. The Appellate Division affirmed, stating:

> The present case provides no basis for disturbing the July 15, 2011 order approving respondent's intermediate accounting. Appellant, by his own admission, knew the accounting to be incomplete upon his receipt of the document yet neither filed any exceptions nor voiced any objection to the accounting at the hearing on its approval. Moreover, all acknowledged that the accounting was interim in nature and that the final accounting would include the assets belatedly brought to the administrator's attention by appellant.

Id. at *1.

In a July 25, 2014 decision, Judge Mary C. Jacobson of the Superior Court of New Jersey, Chancery Division considered

---

[3]  The Appellate Division provided the following background information regarding the underlying motion. In re Estate of Ehrlich, No. 4714-11, 2013 WL 2476490, at *1 (N.J. Super. Ct. App. Div. June 11, 2013). Plaintiff did not file any exceptions to the first intermediate accounting, but after an order was entered approving it, Plaintiff filed a motion to remove the temporary administrator, sought the turnover of all papers and files, and sought an audit and investigation of the administration of the Estate. Id. After that motion and a motion for reconsideration were denied, Plaintiff moved to vacate the order approving the accounting, predominantly on the grounds that the accounting failed to include certain assets of the Estate. Id.

exceptions to a final accounting filed for Decedent's Estate, a
motion seeking removal of Defendant as temporary administrator
and appointment of Plaintiff as executor, and applications by
Defendant and two other attorneys for fees payable from the
Estate.  In the course of considering the exceptions to the
accounting, Judge Jacobson considered Plaintiff's complaint that
the sale price of Decedent's home was substantially less than
its value as set forth in prior appraisals.  Judge Jacobson
found, while the property had originally been appraised around
$350,000 at Decedent's death and for a couple years thereafter,
Defendant had only received offers well below the original
appraisal value.  Defendant thus sought two updated appraisals,
which determined the appraisal value had dropped to somewhere
around $225,000 to $250,000, with necessary repairs
approximating over $107,000.  Defendant thus sought instructions
from the court as to whether he should accept an offer of
$212,500 or make repairs to the property to try to rent it until
the market improved.  After hearing Plaintiff's opposition,
Judge Suter approved and authorized the proposed sale.

     Judge Jacobson concluded:

        The record reveals no action taken by Mr. Ehrlich
     to stop the sale after Judge Suter's ruling.  Moreover,
     Mr. Ehrlich has presented no evidence that would allow
     this court to set aside Judge Suter's Order . . . .  To
     allow Mr. Ehrlich to re-litigate this issue after the
     property has been sold in an effort to obtain a surcharge
     would be unjust and oppressive to the Temporary

Administrator.  When a fiduciary has properly applied to
the probate court for advice and direction with respect
to a transaction involving the administration of the
estate and acts in accordance with the court's
instructions, it would be inequitable to allow an
exceptant who had an opportunity to be heard at the time
of the application to the court for instructions to later
pursue the same objection through an exception to the
final accounting.  By that time the Temporary
Administrator's actions had been sanctioned by the court
and should be given <u>res judicata</u> effect.  To allow
otherwise by an exceptant would create havoc in the
administration of estates, leaving none but the
foolhardy willing to serve as fiduciaries.  Mr.
McInerney proceeded to sell the property only after
court approval and an opportunity for Mr. Ehrlich to be
heard.  Mr. Ehrlich's exception to the sale of the
property must therefore be denied.

The Court also addressed Plaintiff's allegation that

Defendant did not take adequate steps to locate Decedent's will

on his computer:

Even if this claim is true, Mr. Ehrlich offers no
explanation as to how this failure caused any loss to
the Estate.  The writing that was admitted to probate
pursuant to <u>N.J.S.A.</u> 3B:3-3 by Judge Hogan, who issued
a Judgment to this effect that was upheld by the
Appellate Division, was a paper copy of a will, unsigned
by the decedent and any witnesses, but which bore a
notation in the handwriting of the decedent stating,
"original mailed to H.W. Van Sciver 5/20/00."  . . .
Because this document was admitted to probate, any
failure to locate a draft of this document on the
decedent's computer caused no loss to the Estate or to
Mr. Ehrlich.  Whether the decedent had any other draft
of a different purported will on his computer and whether
that different draft would have benefited Mr. Ehrlich is
mere speculation.  Moreover, any draft of an alleged
will retrieved from the decedent's computer would lack
the handwritten notation that both the chancery court
and the Appellate Division relied upon in deciding that
the decedent intended to constitute his will.

Also in addressing the exceptions, the state court stated

Plaintiff's "numerous allegations of duplicitous conduct" by Defendant were "factually unsupportable in the record before the court." Rather, the court found Defendant "acted appropriately in bringing issues to the attention of the court for direction and presenting his accountings to the court for approval." Later in the opinion, in addressing the motion to remove Defendant as temporary administrator, the court stated: "Mr. Ehrlich has not demonstrated that there has been a flagrant dereliction of duty by the Temporary Administrator . . . ." Judge Jacobson ultimately approved the account in all respects.

In an October 30, 2015 Motion Hearing, Judge Jacobson considered a motion by Defendant seeking an order awarding attorneys' fees and costs to him, providing direction as to payment of an attorneys' fee award, and seeking direction as to the distribution of the balance of the Estate, among other requests. Plaintiff opposed the motion, largely based on the alleged failure of Defendant to pursue a particular asset of the Estate – a condominium titled in Decedent's name in the Harbour House Towers of Freeport in the Grand Bahamas.

Judge Jacobson explained that, with regard to an earlier motion, Plaintiff noted that he located a condominium in the Bahamas in Decedent's name. He provided a deed purported to have been signed by Decedent. Plaintiff also provided an e-mail exchange between him and Harbour House, in which Harbour House

confirmed Decedent owned a unit. Judge Jacobson then recounted a series of e-mails showing Plaintiff was aware of the possibility that Decedent owned the condominium in the Bahamas since June 2010.

Defendant certified he was not made aware Decedent had an interest in property in the Bahamas, and if he had been so aware, he would have taken action to transfer the property to the Estate. Judge Jacobson concluded:

> The Court is not convinced that Mr. McInerney, on the basis of the record before it, was ever informed about the Bahamas property and . . . made aware that it was something he should investigate. Jonathan Ehrlich himself had access to the decedent's files and documents. It is throughout the record of this lengthy estate litigation that he had removed documents and files prior to Mr. McInerney's appointment as administrator. . . .
>
> . . . .
>
> N.J.S.A. 3B:17-8 provides that a judgment allowing an account after due notice shall be res adjudicata as to all exceptions which could or might have been taken to the account and shall constitute, exonerate and discharge the fiduciary from all claims of all interested parties, and the statute was relied upon by the Appellate Division in the earlier estate litigation in refusing to allow Mr. Ehrlich to raise issues as to Mr. McInerney's performance that could have been raised in the first accounting but were not . . . .
> Since Mr. Ehrlich was aware of the claim that the decedent owned a condominium in the Bahamas prior to the first and second accountings and failed to file an exception in this regard to either accounting the Court finds that the judgments approving both accountings constitute res adjudicata and eliminate any liability on the part of Mr. McInerney with regard to the Bahamas property.

Similarly, in addressing Defendant's fee request, the court noted Plaintiff "claim[ed] that the Estate ha[d] been mishandled in many respects," but the court found Plaintiff's allegations meritless.[4]

In this federal court action, Plaintiff's complaint brings only one count against Defendant for breach of fiduciary duty. Plaintiff alleges that, as a court-appointed fiduciary, Defendant "owed a common law and statutory duty of care to the beneficiaries and to the estate." The complaint claims Defendant breached his fiduciary duty to Plaintiff and breached his duty, as an attorney, to comply with the Rules of Professional Conduct – specifically Rules 3.3 and 4.1. The following averments are the bases for Plaintiff's claim of a breach of fiduciary duty:

- "He had the obligation to perform a thorough search of the decedent's home and law office to locate the Will and/or evidence of such and he failed to do so."

- "He had the obligation to maintain and preserve all of the papers and property of the decedent but instead he unilaterally and without court authorization discarded papers and property which Jonathan directed that he not discard and or destroy. He had the duty to properly account for and evaluate all assets and obtain fair market value of assets disposed of. He failed to do so."

- "He withheld documents, suppressed, destroyed and or

---

[4]    The Court notes that there were additional proceedings and issues before the state court not addressed in this Opinion. This Court recites only those proceedings, issues, and findings it finds necessary for deciding this Opinion.

spoliated evidence needed by Jonathan to review the accountings he submitted in a proper manner."

- "Years later, in or about March of 2015, Mr. McInerney destroyed all of the documents that were in the decedent's law office, which documents he had been ordered and or requested to maintain. This was done despite the fact that he knew that there were ongoing concerns voiced by Mr. Ehrlich about missing documents. This destruction of documents was also done in the face of repeated directives of Mr. McInerney that no items could be removed from the office."

- "Mr. McInerney in contravention of his fiduciary role also severely undersold estate assets such as the decedent's home in Delanco, New Jersey. The home was appraised at $350,000.00 but it was undersold by over $100,000.00."

- "[H]e had listed for sale the decedent's law office for $300,000 but as of 2014 he suggested in open court before Judge Jacobson that the property should be donated because it had little value."

- "He also was placed on notice of an asset of the estate, namely a condo in the Bahamas but he failed to undertake any investigation whatsoever to locate it and have it timely administered."

- "Mr. McInerney, in his role as a fiduciary, settled a lawsuit that was filed against the decedent's estate without fully investigating the merits of the action and without defending the case in a manner that was consistent with his obligations to preserve the assets of the estate."

- "Most if not all of the order[s] procured by Mr. McInerney were procured through fraud deception and or misrepresentation, including the two accounting orders, the orders for the sale of the house contents, the orders relative to the sale of the decedent's personal and real property and the settlement of the Farias litigation."

## II.

The Court first addresses its jurisdiction over this

matter.  This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(d), as the parties are diverse and the amount in controversy exceeds $75,000.  However, Defendant argues the Rooker-Feldman doctrine precludes this Court from exercising jurisdiction over this matter.  Accordingly, Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).  For the reasons that follow, the Court finds the Rooker-Feldman doctrine does not bar the Court's jurisdiction over this matter.

**A. Standard for Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(1).**

Federal Rule of Civil Procedure 12(b)(1) permits a court to dismiss a case for lack of subject matter jurisdiction.  There are two types of motions that fall under Rule 12(b)(1): "12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  The procedure under these two types of motions is "quite different."  Id.  "The facial attack . . . offer[s] similar safeguards to the plaintiff" as under Rule 12(b)(6) and Rule 56.  Id.  Thus, under a facial attack, "the court must consider the allegations of the complaint as true."  Id.  "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there

is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id.

This is a factual 12(b)(1) motion. Thus, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id. "[T]he plaintiff [has] the burden of proof that jurisdiction does in fact exist." Id.

"The Court may consider court records in considering its subject-matter jurisdiction." Jaye v. Oak Knoll Village Condo. Owners Ass'n, No. 15-83224, 2016 WL 7013468, at *10 (D.N.J. Nov. 30, 2016).

**B. The Rooker-Feldman doctrine does not bar this Court from exercising jurisdiction over this case.**

Defendant argues "[t]he Rooker-Feldman Doctrine precludes this Court from exercising jurisdiction over plaintiff's claims because the plaintiff is essentially bringing an appeal of the Superior Court of New Jersey's decisions," which were recounted in this Court's review of the state court procedural history.

"Rooker and Feldman established the principle that federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments . . . ." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 165

(3d Cir. 2010)

> [T]here are four requirements that must be met for the
> Rooker-Feldman doctrine to apply: (1) the federal
> plaintiff lost in state court; (2) the plaintiff
> "complain[s] of injuries caused by [the] state-court
> judgments"; (3) those judgments were rendered before the
> federal suit was filed; and (4) the plaintiff is inviting
> the district court to review and reject the state
> judgments.

Id. at 166 (alteration in original) (quoting Exxon Mobil Corp.
v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)).
According to the Third Circuit, "the two keys for determining
whether a claim is barred by Rooker-Feldman are the second and
fourth requirements." Hersh v. Citi Mortgage, Inc., 16 F. Supp.
3d 566, 571 (W.D. Pa. 2014) (citing Great W. Mining, 615 F.3d at
166). Accordingly, this Court begins with the second prong.

"The second requirement – that a plaintiff must be
complaining of injuries caused by a state-court judgment – may
also be thought of as an inquiry into the source of the
plaintiff's injury." Great W. Mining, 615 F.3d at 166. "[W]hen
the source of the injury is the defendant's actions (and not the
state court judgments), the federal suit is independent, even if
it asks the federal court to deny a legal conclusion reached by
the state court . . . ." Id. at 167. For the second element,
"[a] useful guidepost is the timing of the injury, that is,
whether the injury complained of in federal court existed prior
to the state-court proceedings and thus could not have been

'caused by' those proceedings." Id. "The critical task is thus to identify those federal suits that profess to complain of injury by a third party, but actually complain of injury 'produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.'" Id. at 166.

The Court finds Plaintiff's claim is not barred by the Rooker-Feldman doctrine. Plaintiff is bringing a breach of fiduciary duty claim against Defendant. He claims Defendant's actions "caused damages in the form of needless attorney's fees, protracted litigation, and financial damages to the estate." The Court finds the only source of Plaintiff's alleged injury is Defendant himself. The Court acknowledges that the state court considered many of the same issues before the Court today, such as the alleged underselling of Decedent's Delanco home and Defendant's alleged lack of investigation into a Bahamas condominium owned by Decedent.

However, the state court's decisions on these issues did not cause Plaintiff's injury. Rather, the Court finds these state court judgments can be considered, at most, to have "simply ratified, acquiesced in, or left unpunished," id., this alleged breach of fiduciary duty. Indeed, in considering "whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been 'caused by' those proceedings," id. at 167, the Court notes that

any breach of fiduciary duty would have occurred prior to the
state court's decisions.  For instance, Defendant's alleged
breach of fiduciary duty for failure to investigate the
condominium in the Bahamas would have to have occurred prior to
the state court's October 30, 2015 decision eliminating any
liability of Defendant with regard to the property.  Similarly,
Defendant's alleged breach of fiduciary duty for allegedly
underselling Decedent's Delanco home would have to have occurred
prior to the state court's July 25, 2014 decision denying
Plaintiff's exception to the sale of the property based on the
alleged sale of the property for less than its value.

Even though Plaintiff is, in several instances, asking this
Court "to deny a legal conclusion reached by the state court,"[5]
id., the legal conclusion reached by the state court was not the
cause of the alleged injury.  The Court finds the following
example from the Third Circuit, referenced in Great Western

_____

[5]    For instance, Plaintiff's complaint alleges Defendant
"severely undersold" Decedent's Delanco residence.  However, the
state court approved and authorized the sale and thereafter
found Defendant "properly applied to the probate court for
advice and direction."  Further, Plaintiff's complaint alleges
Defendant "was placed on notice" of Decedent's condominium in
the Bahamas but "failed to undertake any investigation
whatsoever to locate it and have it timely administered."
However, the state court found Plaintiff was aware of the
Bahamas condominium prior to the first and second accountings
and thus "the judgments approving both accountings constitute[]
res adjudicata and eliminate any liability on the part of Mr.
McInerney with regard to the Bahamas property."  It also found
Defendant "was [not] ever informed about the Bahamas property."

<u>Mining</u>, illustrative:

> Suppose a plaintiff sues his employer in state court for
> violating both state anti-discrimination law and Title
> VII and loses.  If the plaintiff then brings the same
> suit in federal court, he will be seeking a decision
> from the federal court that denies the state court's
> conclusion that the employer is not liable, but he will
> not be alleging injury from the state judgment.  Instead,
> he will be alleging <u>injury based on the employer's</u>
> <u>discrimination</u>.

<u>Id.</u> (quoting <u>Hoblock v. Albany Cty. Bd. of Elections</u>, 422 F.3d

77, 87-88 (2d Cir. 2005)(emphasis in original)).

Like that example, while Plaintiff is addressing many of

the issues with Defendant's actions discussed in the state court

decisions, he is still alleging injury based on Defendant's

actions.  As <u>Great Western Mining</u> stated, "that the state court

chose not to remedy the injury does not transfer the subsequent

federal suit on the same matter into an appeal, forbidden by

<u>Rooker-Feldman</u>, of the state-court judgment."

The Court also finds the case <u>McCormick v. Braverman</u>, 451

F.3d 382 (6th Cir. 2006), referenced in <u>Great Western Mining</u>,

particularly relevant.  In <u>Braverman</u>, the plaintiff broadly

alleged that she was the owner of certain real property and that

the defendants acted illegally in interfering with her

ownership.  <u>Id.</u> at 384.  In considering the <u>Rooker-Feldman</u>

doctrine, the court found several of the counts were not

precluded by the doctrine.  <u>Id.</u> at 392.  Particularly relevant

to this case, the plaintiff had alleged the defendants committed

fraud and misrepresentation in the state court proceedings. Id. The court found this injury was not caused by the state court judgments. Id. Rather, the court found this was an "independent claim[] that those state court judgments were procured by certain Defendants through fraud, misrepresentation, or other improper means." Id.

In Braverman, "[e]ven though the injuries of which the plaintiff complained helped to cause the adverse state judgments, these claims were 'independent' because they stemmed from 'some other source of injury, such as a third party's actions.'" Great W. Mining, 615 F.3d at 168 (quoting Braverman, 451 F.3d at 393). As in Braverman, Plaintiff alleges several breaches of fiduciary duty committed during the course of the state court proceedings. This is similarly an "independent claim[]" "stemm[ing] from . . . 'a third party's actions.'" Id. (quoting Braverman, 451 F.3d at 393).

The Court reiterates that "Rooker-Feldman . . . is a narrow doctrine, confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" Lance v. Dennis, 546 U.S. 459, 464 (2006) (quoting Exxon Mobil Corp., 544 U.S. at 284). This is not such a case.

**III.**

Defendant also argues this matter should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## A. **Standard for Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6).**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However, "the Federal Rules of Civil Procedure . . . do require that the pleadings 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

A district court, in weighing a motion to dismiss, asks

"not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Bell Atl. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

**B. New Jersey's statutory law and the entire controversy doctrine require dismissal of the claim against Defendant.**

"[T]he Rooker-Feldman inquiry is distinct from the question of whether claim preclusion (res judicata) or issue preclusion (collateral estoppel) defeats the federal suit." Great W. Mining, 615 F.3d at 170. Thus, "[c]laims that survive Rooker-Feldman may nevertheless be barred by res judicata doctrines such as claim preclusion, issue preclusion, and the entire controversy rule." Aliperio v. Bank of Am., N.A., No. 16-1008, 2016 WL 7229114, at *10 (D.N.J. Dec. 13, 2016).

> The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."

<u>Marrese v. Am. Academy of Orthopaedic Surgeons</u>, 470 U.S. 373, 380 (1985) (alterations in original) (28 U.S.C. § 1738).  28 U.S.C. § 1738 "directs a federal court to refer to the preclusion law of the State in which judgment was entered."  <u>Id.</u>

Accordingly, this Court looks to New Jersey law for the application of its preclusion doctrines.[6]  The Court begins by addressing New Jersey statutory law.

**1. N.J.S.A. 3B:17-8**

N.J.S.A. 3B:17-8 provides:

> A judgment allowing an account, including a guardian's intermediate account, after due notice, shall be res adjudicata as to all exceptions which could or might have been taken to the account, and shall constitute an approval of the correctness and propriety of the account, the legality and propriety of the investments and other assets, the legality and propriety of the

---

[6]  "In deciding motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  <u>Lum v. Bank of Am.</u>, 361 F.3d 217, 221 n.3 (3d Cir. 2004).  The Third Circuit has held that "a prior judicial opinion constitutes a public record of which a court may take judicial notice."  <u>M & M Store Co. v. Pennsylvania</u>, 388 F. App'x 156, 162 (3d Cir. 2010); <u>accord</u> <u>Gage v. Warren Twp. Comm. & Planning Bd. Members</u>, 463 F. App'x 68, 71 (3d Cir. 2012) ("The District Court may take judicial notice of the record from a previous court proceeding between the parties.").  The district court, however, "may do so on a motion to dismiss only to establish the existence of the opinion, and not for the truth of the facts asserted in the opinion."  <u>M & M Store</u>, 388 F. App'x at 162.  Accordingly, the Court will consider the relevant state court decisions in addressing Defendant's arguments and the sufficiency of Plaintiff's complaint.  The Court considers these solely for the purpose of determining whether New Jersey's preclusion doctrines apply and not for the truth of facts asserted in those decisions.

changes in investments or other assets, and the legality and propriety of other matters, and also shall exonerate and discharge the fiduciary from all claims of all interested parties and of those in privity with or represented by interested parties except:

a.  For the investments and other assets in the fiduciary's hands at the close of the period covered by the account, and assets which may come into his hands after the close of the account;

b.  Insofar as exceptions to the account shall be taken and sustained; and

c.  As relief may be had from a judgment in any civil action.[7]

Pursuant to this statute, "[t]hose parties who actually raise and litigate an issue in an accounting proceeding are bound by the judgment entered thereon." In re Estate of Yablick, 526 A.2d 1134, 1138 (N.J. Super. Ct. App. Div. 1987).

Plaintiff "actually raise[d] and litigate[d]," id., issues in the Estate's accounting proceeding. The state court judgment approving the account thus is "res adjudicata as to all exceptions which could or might have been taken to the account" and "exonerate[d] and discharge[d Defendant] from all claims of all interested parties," N.J.S.A. 3B:17-8.

In addressing Plaintiff's exceptions to the accounting, the state court specifically considered Defendant's search for

---

[7]  The Appellate Division's June 11, 2013 decision referenced this statute as well. In re Estate of Ehrlich, 2013 WL 2476490, at *2.

Decedent's will[8] and the alleged undersale of Decedent's Delanco property.  Further, as provided in the statute, the approval of the account "discharge[d] the fiduciary from all claims."  Thus, pursuant to N.J.S.A. 3B:17-8, all claims of a breach of fiduciary duty existing when Plaintiff objected to the accounting are precluded here.  Accordingly, the Court finds all of the actions Plaintiff alleges constituted a breach of fiduciary duty are precluded, with the exception of the alleged March 2015 destruction of documents, which occurred after approval of the accounting.[9]

### 2. The Entire Controversy Doctrine

The Court addresses the entire controversy doctrine next. See Aliperio, 2016 WL 7229114, at *10 ("The entire controversy doctrine, the broadest version of res judicata, is an apt bellwether for the other, narrower doctrines."); see also Sutton v. Sutton, 71 F. Supp. 2d 383, 390 (D.N.J. 1999).  This doctrine has been codified at N.J. Court Rule 4:30A, which provides: "Non-joinder of claims required to be joined by the entire

_____

[8]    Specifically, the state court addressed Defendant's efforts to search for Decedent's will on his computer.  Any additional concerns regarding Defendant's search for the will also should have been brought at that time.

[9]    The Court notes N.J.S.A. 3B:17-8 has been infrequently cited, with little interpretation, from New Jersey courts.  The Court looks to the direct language of the statute.  To this Court, the statement that Defendant is exonerated from "all claims" includes claims for breach of fiduciary duty related to Defendant's acts as temporary administrator.

controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine."

"The 'entire controversy doctrine seeks to assure that all aspects of a legal dispute occur in a single lawsuit.'" Fornarotto v. Am. Waterworks Co., 144 F.3d 276, 278 (3d Cir. 1998) (quoting Olds v. Donnelly, 696 A.2d 633, 637 (N.J. 1997)). "It extinguishes any subsequent federal-court claim that permissibly could have been, but was not, joined in the prior state action." Aliperio, 2016 WL 7229114, at *10. "Although res judicata principles and New Jersey's entire controversy doctrine are 'blood relatives,' the latter is New Jersey's 'specific, and idiosyncratic, application of traditional res judicta principles,'" involving "traditional concepts of claims joinder as well as party joinder." Id. (quoting Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997)).

The Court begins by considering whether the doctrine can be applied in this case, as the New Jersey Supreme Court has previously indicated that applying the entire controversy doctrine is inappropriate in certain probate proceedings. As recognized by the Appellate Division in Higgins v. Thurber, 992 A.2d 50 (N.J. Super. Ct. App. Div. 2010), aff'd, 14 A.3d 745 (N.J. 2011), "[t]he relationship between the entire controversy

24

doctrine and probate actions has not been widely considered by [New Jersey] courts." Id. at 57. This remains true in 2017. This Court now addresses the relatively limited case law that has emerged regarding the applicability of the entire controversy doctrine to probate proceedings.

In Perry v. Tuzzio, 672 A.2d 213 (N.J. Super. Ct. App. Div. 1996), the Appellate Division considered the applicability of the entire controversy doctrine to a professional negligence action brought by an alternate executrix against the accountant partnership that had employed the plaintiff's predecessor executor. Id. at 214. The plaintiff learned the partners had made an imprudent loan, among other questionable conduct. Id. Accordingly, the plaintiff sought the partner's removal as executor. Id. The partner eventually agreed to his removal. Id.

Thereafter, the partner filed a complaint to settle his account, to which the plaintiff filed exceptions. Id. at 214-15. While that action was pending in appellate court, the plaintiff brought a professional negligence claim against the defendant partnership that had employed the partner, seeking recovery based on respondeat superior liability and negligent supervision theories. Id. at 215. The court granted summary judgment based in part on the entire controversy doctrine. Id.

The Appellate Division found the trial court erred in

dismissing the action on entire controversy grounds.  Id.  The

Appellate Division stated:

> Our difficulty here lies in the fact that the
> original action was not a plenary action at law but
> rather a piece of a probate action – a hearing on
> exceptions to an executor's account.  The question is
> whether an exceptant to an accounting is obliged in that
> summary proceeding to join all persons, uninvolved as
> they may be in the probate proceeding, who have any
> transactional relationship to the subject of the
> exception – irrespective of the nature of that
> relationship, irrespective of a right to a jury trial
> and full discovery which any such person might have, and
> irrespective of the burden such a requirement may impose
> on the orderly procedure for the administration of
> decedent's estate.
>     We doubt that the entire controversy doctrine was
> ever intended to go this far since its application in
> that situation is so basically inconsistent with the
> limited nature of an accounting proceeding.  As we
> understand accounting proceedings, participation is
> limited to parties in interest in the state –
> beneficiaries, heirs, legal representatives,
> fiduciaries, sureties, and creditors.  An exception to
> an executor's account is not a vehicle for adjudication
> of claims that an estate may have against third persons
> but rather a vehicle for determining the propriety of
> the executor's statement of assets and claims for
> allowance.  Consequently, it is only the conduct of the
> executor, not the conduct of others, that is properly
> before the court.

Id. at 215-16 (citations omitted).

The Appellate Division concluded that invocation of the

entire controversy doctrine would be inequitable.  Id. at 216.

> First, application of the doctrine requires equality of
> forum, that is, the first forum must have been able to
> provide all parties with the same full and fair
> opportunity to litigate the issues and with the same
> remedial opportunities as the second forum.  The limited
> nature of the accounting procedure in general and the
> hearing on exceptions in particular readily indicates

> that that was neither the forum nor the procedure for
> litigating a professional malpractice claim against
> persons not in interest in the estate.
>
> Moreover, there is nothing at all to suggest that
> an exceptant would have been put on notice, even by the
> developing body of case law, that persons not in interest
> in the estate who had a liability to the estate related
> to the subject of the exception would have to be joined
> in order for the claim to be preserved. That simply is
> not consistent with the general understanding of the bar
> regarding the nature of probate proceedings.

Id. (citation omitted). The Appellate Division concluded "that application of the entire controversy doctrine in these circumstances to preclude this action would constitute a trap for the unwary rather than a shield for the judicial system and its litigants against the unfair burden of multiple related separate actions." Id. at 217.

Higgins v. Thurber involved a legal malpractice claim by two of the decedent's daughters, Laura and Robyn, against the defendants, who were attorneys for the estate of the decedent. 992 A.2d at 52. The decedent was survived by four children from his first marriage: Laura, Michael, Sally, and Robyn. Id. at 53. He was also survived by his second wife, Donna, and a fifth child between him and Donna, named Jenna. Id. Prior to the decedent's death, Donna, exercising a power of attorney, transferred to herself four of six seats the decedent held on the New York Mercantile Exchange (NYMEX). Id. Michael, as executor, commenced an action alleging Donna improperly transferred these seats to herself. Id. It was determined

Donna was entitled to two of the seats and the estate to four of the seats. _Id._

Prior to that decision, Donna also commenced suit alleging Michael engaged in misconduct as executor and that Robyn, Jenna's guardian ad litem, was not acting in Jenna's best interests. _Id._ She sought both Michael's and Jenna's removal from their respective positions. _Id._ Donna's complaint was dismissed with prejudice for reasons not disclosed. _Id._

Thereafter, Donna commenced another action, again seeking removal of Michael and Robyn from their positions, as well as a formal accounting from Michael. _Id._ at 53-54. The court rejected Donna's efforts to remove Michael and Robyn, but ordered Michael to file a formal accounting. _Id._ at 54.

Michael thereafter filed a complaint seeking approval of his formal accounting. _Id._ Exceptions were filed by Sally's estate and by Jenna. _Id._ While pending, Jenna filed suit against Michael, Robyn, and the defendant-attorneys, alleging breach of fiduciary duty and legal malpractice by the defendant-attorneys. _Id._ Robyn filed a cross-claim against the defendant-attorneys, denying any wrongdoing but seeking contribution and indemnification. _Id._ The legal malpractice action was thereafter dismissed on summary judgment. _Id._ at 55.

While Jenna's legal malpractice action remained pending, Robyn and Laura filed exceptions in the formal accounting

action.  Id. at 54.  "The exceptions were highly critical of the services rendered by defendant-attorneys . . . ."  Id. at 54-55.  The defendant-attorneys were permitted to intervene in the formal accounting action with respect to issues relating to their legal representation.  Id. at 55.  Laura and Robyn's claims against the defendant-attorneys were then voluntarily dismissed.  Id.

Laura and Robyn then filed suit against the defendant-attorneys alleging legal malpractice, among other claims for relief.  Id. at 56.  The trial court found the claim was barred by the entire controversy doctrine.  Id.

The Appellate Division stated:

> It is not uncommon for an estate to be the subject of numerous independent lawsuits.  For example, a conflict between beneficiaries may arise as to whether a Will offered for probate was the product of undue influence.  In such an instance, a complaint containing such allegations may ultimately result in a full blown action in the Probate Part before a final judgment is rendered as to whether the Will should be probated, or whether an earlier Will should be probated, or whether the decedent be deemed intestate.  Following that, a second action might be filed regarding the conduct of an estate's representative, which may ultimately be tried and disposed of by entry of a final judgment.  In addition, at various subsequent times, the estate's representative or other fiduciary may seek by way of a new lawsuit a declaration of the manner in which a Will or other instrument should be construed, R. 4:83-4(c)(2), or file a complaint for "directions by the court as to the fiduciary's authority or duties," R. 4:83-4(c)(3).  And, ultimately, an estate may become the subject of another suit in which its representative seeks the court's approval of an accounting.  R. 4:83-4(c)(1); R. 4:87-1.

<u>Id.</u> at 57.

The Appellate Division concluded that "the argument that subsequent actions brought in the Probate Part may be barred by, for example, the complete adjudication of a dispute about the probating of a particular Will, is foreign to probate practice and inconsistent with the goals of the entire controversy doctrine." <u>Id.</u> Thus, the Appellate Division determined that "the principles underlying the entire controversy doctrine were not offended when Laura and Robyn failed to pursue to a conclusion their legal malpractice claim in the NYMEX suit" or in the two proceedings initiated by Donna. <u>Id.</u> It stated: "Their malpractice claim, during any of those proceedings, was arguably either unknown or unaccrued. Moreover, even if known and accrued, at some point during the life of those suits, its assertion on those earlier occasions would have been inconsistent with the nature of those particular proceedings." <u>Id.</u> In considering whether the legal malpractice claim should have been pursued in the formal accounting action, the Appellate Division concluded:

> For essentially the same reasons expressed by Judge Pressler in <u>Perry</u>, we reject the application of the entire controversy doctrine to bar the legal malpractice action asserted here. We cannot gather from the record on appeal that Laura and Robyn were truly given a full and fair opportunity to prosecute that claim within the context of the formal accounting action. The orders entered in that case reveal: intervention of defendant-

attorneys was permitted on March 20, 2006; a subsequent
order called for the service of expert reports by April
27, 2006; depositions of experts were ordered to occur
within the week after service of the reports; and the
trial date for the entire action remained set for May
30, 2006. Although the judge in that action had
unmistakably expanded the scope of the proceedings
beyond what might normally be expected in an accounting
action in the Probate Part, the opportunity for a full
and fair hearing on those new issues was illusory. That
is, the judge gave Laura and Robyn a right to pursue
whatever claims against defendant-attorneys that may
have been encompassed by their exceptions, but did not
provide the concomitant right to a full and fair
exploration or development of those issues prior to a
trial date that loomed a mere two months after expansion
of the accounting action's scope. Accordingly giving
full expression to the equitable nature of the entire
controversy doctrine, we conclude it would be unfair and
unjust to bar the legal malpractice claim in these
circumstances.

Id. at 61 (footnote omitted).

In affirming, the New Jersey Supreme Court added the

following:

An action to settle an account on an estate trust
is a formalistic proceeding, unique to probate. Its
stylized format involves a line-by-line review on the
exceptions to an accounting. In the context of this and
like proceedings in probate, the entire controversy
doctrine is out of place. The Appellate Division in the
present case rightly detected that it would be anomalous
to assume that Thurber's intervention in the specialized
probate proceeding that focused on the executor somehow
converted the proceeding into an action binding as to
any and all other potential actions in respect of other
parties. As Judge Pressler observed fifteen year ago in
Perry, . . . an action for an accounting on an estate
provides a means for addressing "the conduct of the
executor, not the conduct of others." While it certainly
may be permissible for a chancery court to expand a
probate proceeding to encompass a claim of legal
malpractice, that was not done here.

Higgins v. Thurber, 14 A.3d 745, 746 (N.J. 2011) (citations omitted) (quoting Perry, 672 A.2d 213). It concluded "that the belated intervention by [the defendant-attorneys] raised equitable reasons for not applying the entire controversy doctrine in this matter." Id. at 746. The Court expressed a "view the entire controversy doctrine as generally having no place in probate proceedings, for the reasons expressed by Judge Pressler in Perry." Id. at 746-47.

Estate of McMullin v. McMullin, No. 1813-11, 2013 WL 627059 (N.J. Super. Ct. App. Div. 2013) distinguished these cases. The background facts are as follows. Husband and wife Davis Sr. and Elaine had five children: Lisa, Brian, Davis Jr., Stacey, and Kevin. Id. at *1. In 1990, the couple executed sweetheart wills. Id. In 2007, new wills were executed by the couple incorporating testamentary trusts, a marital deduction trust, and a credit shelter trust. Id. The most significant asset in David Sr.'s estate was a fifty percent interest in Monmouth Truck Rental Realty Partnership ("Monmouth Truck"). Id. His son David Jr. was the other fifty percent owner. Id.

Davis Sr. died on September 26, 2007. Id. Elaine filed a caveat against the probate of Davis Sr.'s 2007 will, asserting it was the product of undue influence and that David Sr. lacked testamentary capacity. Id. Elaine was thereafter appointed as temporary administratrix of David Sr.'s estate. Id. The order

of appointment restrained her from alienating his interest in Monmouth Truck.  Id.  Elaine initiated an action to probate Davis Sr.'s 1990 will.  Id. at *2.

David Jr. then decided to sell Monmouth Truck to a third-party for $5,000,000, which Elaine, as temporary administratrix, consented to.  Id.  On February 24, 2009, the court ordered the probate of David Sr.'s 2007 will.  Id.  In 2008, Elaine executed a new will, leaving her entire estate to David Jr.  Id.  Elaine died on October 1, 2009.  Id.  Lisa filed a caveat against the probate of the 2008 will.  Id.  Lisa and Brian, as co-executors of David Sr.'s estate, also asserted a claim of $750,000 against Elaine's estate, claiming she wrongfully authorized the sale of Monmouth Truck and also failed to realize the estate's full interest in the total sale proceeds.  Id. at *2-3.  The claim was in part based on a believed payment to David Jr. for a covenant not to compete.  Id.

David Jr. then initiated an action against Lisa and Brian as co-executors and co-trustees of David Sr.'s estate, charging them with failing to distribute estate assets and failing to provide a formal accounting.  Id. at *3.  This matter was settled prior to trial.  Id.

Brian and Lisa then, as co-executors and co-trustees of David Sr.'s estate, filed an action against David Jr. and Elaine's estate claiming David Jr. intentionally failed to

disclose the restrictive covenant. Id. They further alleged Elaine failed to assert David Sr.'s estate's interest in the asset while she served as temporary administrative, or she alternatively failed to investigate the existence of the covenant. Id. at *4. David Jr. challenged this, in part, as precluded by the entire controversy doctrine. Id.

The Appellate Division rejected the plaintiff's argument that the entire controversy doctrine is inapplicable to probate proceedings. Id. at *6. The court read Thurber as "express[ing] the conclusion that under the factual circumstances presented, application of the entire controversy doctrine was improper." Id. at *7. The court found "application of the entire controversy doctrine may be appropriate when probate proceedings are expanded beyond a summary review of an executor's accounting following the administration of an estate." Id.

> We also find ludicrous plaintiff's suggestion the claims could not have been litigated in the summary probate proceedings. Admitting the causes of action now alleged in the Law Division complaint were "against parties in the underlying probate actions," plaintiff contends the estate administrations "related to the limited purpose of said probate actions, being a will contest and a fiduciary's accounting." On the contrary, the record reflects every aspect of the probate proceedings regarding the administration of David Sr. and Elaine's estate involved contentious litigation. The parties battled over the fiduciaries, the propriety of the testamentary instruments, the actions of the temporary fiduciaries, and the determination of claims and the distribution of the residuary assets. Moreover,

> a creditor's claim for payment, as well as a claim of
> breach of fiduciary responsibility, would appropriately
> have been presented in the probate cases.

Id. (footnote omitted). The Appellate Division concluded

"[b]oth the claims against David Jr. and Elaine should have been

raised in the course of this proceeding." Id. at *8.

The Court will follow McMullin here. The Court finds Perry

v. Tuzzio's decision to not apply the entire controversy

doctrine inapplicable under the starkly different facts found in

this case. First, the court in Perry commented on the "limited

nature of [the] accounting proceeding." 672 A.2d at 216. This

is not such a case where the accounting proceeding was so

limited that it could not encompass these breach of fiduciary

duty claims. Rather, Plaintiff's exceptions were vast, and many

sounded in breach of fiduciary duty. Indeed, in his exceptions,

he specifically demanded "damages for the Temporary

Administrator's breach of duty."[10]

Further, the Perry court grappled with the fact that the

second matter involved a third party to the original matter,

stating that "[a]n exception to an executor's account is not a

vehicle for adjudication of claims that an estate may have

against third persons but rather a vehicle for determining the

---

[10]   The Court notes Judge Jacobson found Plaintiff's exceptions
insufficient. The Court appears to have construed the various
complaints against Defendant in Plaintiff's certification as
exceptions. This Court does the same.

propriety of the executor's statement of assets and claims for allowance." Id.  This case does not involve a third party to the underlying matter.  Rather, both parties were intimately involved in the probate litigation from the very beginning.  The court's statement that a "hearing on exceptions . . . readily indicates that that was neither the forum nor the procedure for litigating a professional malpractice claim against persons not in interest in the estate," id. (emphasis added), must be read to apply only where the professional malpractice claim, which is akin to a breach of fiduciary duty claim, is asserted against such a third party.

The Court similarly finds Higgins v. Thurber distinguishable.  The Appellate Division in Higgins focused on its finding that "the opportunity for a full and fair hearing" on the issues of legal malpractice "was illusory" and that the defendant-attorneys were late intervenors in the accounting action and that a trial date was set for two months after the intervention.  992 A.3d at 61.  The Supreme Court in Higgins similarly refused "to assume that [the partner]'s intervention in the specialized probate proceeding that focused on the executor somehow converted the proceeding into an action binding as to any and all other potential actions in respect of other parties."  14 A.3d at 746.  This is not a case where the defendant was a belated intervenor due to a tangential issue to

a formal accounting.  As stated, both parties were litigating in the probate action since the beginning of this litigation.

The Court finds McMullin most analogous to this case.  The Court agrees with the McMullin court that Thurber does not stand for the proposition that the entire controversy doctrine is wholly inapplicable to probate proceedings; rather, Thurber held that the doctrine was inapplicable "under the factual circumstances presented" in that case.  2013 WL 627059, at *7. This Court agrees "the entire controversy doctrine may be appropriate when probate proceedings are expanded beyond summary review of an executor's accounting," id., as they were here. Similar to McMullin, where "every aspect of the probate proceedings . . . involved contentious litigation," id., the probate proceedings regarding the administration of Decedent's estate involved contentious litigation and went well beyond a mere summary review of the account.  Plaintiff not only made various exceptions, but Plaintiff asked for damages based on Defendant's alleged breach of fiduciary duty, and for the removal of Defendant as temporary administrator, among other requests for relief throughout the probate proceedings.

Having determined that the entire controversy doctrine can be applied in this case, the Court finds this doctrine bars Plaintiff's claim of breach of fiduciary duty against Defendant.

In determining whether successive claims constitute

> one controversy for purposes of the doctrine, the
> central consideration is whether the claims against the
> different parties arise from related facts or the same
> transaction or series of transactions. It is the core
> set of facts that provides the link between distinct
> claims against the same or different parties and
> triggers the requirement that they be determined in one
> proceeding. One measure of whether distinct claims are
> part of an entire controversy is whether parties have a
> significant interest in the disposition of a particular
> claim, one that may materially affect or be materially
> affected by the disposition of that claim. The test for
> whether claims are 'related' such that they must be
> brought in a single action under New Jersey entire
> controversy doctrine was expressed in O'Shea v. Amoco
> Oil Co., 886 F.2d 584 (3d Cir. 1989), as follows: if
> parties or persons will, after final judgment is
> entered, be likely to have to engage in additional
> litigation to conclusively dispose of their respective
> bundles of rights and liabilities that derive from a
> single transaction or related series of transactions,
> the omitted components of the dispute or controversy
> must be regarded as constituting an element of one
> mandatory unit of litigation.

Ditrolio v. Antiles, 662 A.2d 494, 502 (N.J. 1995) (citations

omitted).

"The entire controversy doctrine does not require

commonality of legal issues. Rather, the determinative

consideration is whether distinct claims are aspects of a single

larger controversy because they arise from interrelated facts."

Id. at 504. While "the same set of facts can give rise to

discrete causes of action and different kinds of relief[,] . . .

[a] plaintiff bringing an action based on two distinct legal

theories is required to bring those claims together in one

proceeding." Id.

"[B]ecause the entire controversy doctrine is an equitable principle, its applicability is left to judicial discretion based on the particular circumstances inherent in a given case." Mystic Isle Dev. Corp. v. Perskie & Nehmad, 662 A.2d 523, 529-30 (N.J. 1995).

The Court finds the entire controversy doctrine bars Plaintiff's breach of fiduciary duty claim against Defendant. All of Plaintiff's bases for asserting a breach of fiduciary duty claim against Defendant "arise from related facts" and the same "series of transactions." Ditrolio, 622 A.2d at 502. Defendant's conduct as temporary administrator was Plaintiff's focal point throughout nearly the entirety of the state court litigation. Not only did Plaintiff specifically allege a breach of duty in his exceptions, but the specific allegations of conduct contributing to his breach of duty claim were all actually litigated in state court or should have been at that time. Even Plaintiff's claims of conduct occurring in March 2015 could have been addressed in October 2015 before Judge Jacobson. While "[t]he entire controversy doctrine does not apply to unknown or unaccrued claims," id. at 505, the Court does not find any of Plaintiff's claims were unknown or unaccrued at that time. Accordingly, the entire controversy doctrine bars Plaintiff's claim against Defendant in its entirety.

As the Court finds N.J.S.A. 3B:17-8 and the entire controversy doctrine require dismissal of Plaintiff's breach of fiduciary duty claim against Plaintiff, the Court will not address the applicability of claim preclusion, issue preclusion, or the other arguments propounded in Defendant's briefing to this Court. Plaintiff's breach of fiduciary duty claim against Defendant will be dismissed.

An appropriate Order will be entered.


Date: <u>December 13, 2017</u>          <u>s/ Noel L. Hillman</u>
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.