# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

JONATHAN EHRLICH,                    1:17-cv-879 (NLH/KMW)

         Plaintiff,        **OPINION**

    v.

DENNIS P. MCINERNEY, ESQ.,
THOMAS W. SASAKI, ERIC
SASAKI, RE/MAX WORLD CLASS
REALTY, O'HARA APPRAISALS,
AND MARTIN T. O'HARA,

         Defendants.

_____

**APPEARANCES**:

PETER A. OUDA
PETER A. OUDA, LLC
19 NORTH BRIDGE STREET
SOMERVILLE, NEW JERSEY 08876

    _On behalf of Plaintiff_

JOHN L. SLIMM
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
15000 MIDLANTIC DRIVE, SUITE 200
P.O. BOX 5429
MOUNT LAUREL, NEW JERSEY 08054

    _On behalf of Defendant Dennis P. McInerney_

MICHAEL S. MIKULSKI II
PHILIP JOHN DEGNAN
CONNOR WEBER & OBERLIES, P.C.
304 HARPER DRIVE
SUITE 201
MOORESTOWN, NJ 08057

    _On behalf of Defendants Thomas W. Sasaki, Eric Sasaki, and
    Re/Max World Class Realty_

ANNE M. DALENA
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
200 CAMPUS DRIVE
FLORHAM PARK, NJ 07932

*On behalf of O'Hara Appraisals and Martin T. O'Hara*

**HILLMAN**, **District Judge**

This matter arises from a decades' worth of litigation regarding the Estate of Richard D. Ehrlich, who died on September 21, 2009.[1] One of the claims lodged by Plaintiff, Jonathan Ehrlich, the decedent's nephew, in his original complaint in this action was a breach of fiduciary duty claim against Defendant Dennis P. McInerney, the temporary administrator of the Estate. On December 13, 2017, this Court dismissed Plaintiff's claims against McInerney, finding that Plaintiff's claims were barred by New Jersey's entire controversy doctrine and N.J.S.A. 3B:17-8.[2]

---

[1] This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(d), as the parties are diverse and the amount in controversy exceeds $75,000.

[2] N.J.S.A 3B:17-8, Effect of judgment allowing account, provides:

A judgment allowing an account, including a guardian's intermediate account, after due notice, shall be res adjudicata as to all exceptions which could or might have been taken to the account, and shall constitute an approval of the correctness and propriety of the account, the legality and propriety of the investments and other assets, the legality and propriety of the changes in investments or other assets, and the legality and propriety of other matters, and also shall exonerate and discharge the fiduciary from all claims of all interested parties and of

Currently pending before the Court is the motion of Plaintiff pursuant to Fed. R. Civ. P. 60(b) to vacate the Court's dismissal of his claims against McInerney because of evidence obtained from McInerney's deposition as a fact witness with regard to Plaintiff's claims against the other defendants. As to the other defendants, Plaintiff claims that Re/Max World Class Realty, Thomas W. Sasaki, and Eric Sasaki ("Realtor defendants") acted negligently in the real estate listing of two of the decedent's properties. Plaintiff also claims that O'Hara Appraisals and Martin T. O'Hara ("Appraisal defendants") negligently prepared appraisals for the two properties. Also pending before the Court are the motions of these defendants for summary judgment.

McInerney has opposed Plaintiff's Rule 60(b) motion. Plaintiff has partially opposed the Realtor defendants' motion for summary judgment. Plaintiff has not filed an opposition to

---

those in privity with or represented by interested parties except:

a. For the investments and other assets in the fiduciary's hands at the close of the period covered by the account, and assets which may come into his hands after the close of the account;

b. Insofar as exceptions to the account shall be taken and sustained; and

c. As relief may be had from a judgment in any civil action.

the Appraisal defendants' summary judgment motion.

For the reasons expressed below, the Court will deny Plaintiff's motion, and grant Defendants' motions.

## BACKGROUND

The Court restates the relevant background from the Court's December 13, 2017 Opinion (Docket No. 31), which recounted the June 29, 2012 decision by the New Jersey Superior Court, Appellate Division, In re Estate of Ehrlich, 47 A.3d 12 (N.J. Super. Ct. App. Div. 2012), certif. denied, 59 A.3d 602 (N.J. 2013), appeal dismissed, 64 A.3d 556 (N.J. 2013). Decedent was a trust and estates attorney in Burlington County, New Jersey. Id. at 13-14. He died on September 21, 2009, with his only next of kin being his nephews, Todd Ehrlich and Plaintiff, and his niece Pamela Venuto. Id. at 14. While Decedent had not had contact with Todd or Pamela for over twenty years, he maintained a close relationship with Plaintiff, who he had told friends was the person to contact if he were to die and was the person to whom he would leave his estate. Id.

Upon learning of Decedent's death, a search for Decedent's will ensued. Id. Plaintiff located a copy of a purported will in a drawer in Decedent's home. Id. On December 17, 2009, Plaintiff filed a complaint seeking to have the purported will admitted to probate. Id. Todd and Pamela objected. Id. McInerney, who had previously been named as Trustee of

Decedent's law practice, was appointed as temporary administrator.  Id.  While McInerney was ordered to inspect Decedent's home, no other document purporting to be Decedent's will was ever located.  Id.

The purported will that was recovered provided a specific bequest of $50,000 to Pamela, a specific bequest of $75,000 to Todd, twenty-five percent of the residuary to pass through a trust to a friend, and seventy-five percent of the residuary to pass to Plaintiff.  Id.  On April 20, 2011, the proffered will was admitted to probate.  Id. at 13.  The court then denied a motion for reconsideration on June 20, 2011.  Id.  The Appellate Division then affirmed, finding the will was properly admitted to probate.  Id. at 19.  While the decision was appealed to the New Jersey Supreme Court, Plaintiff's complaint provides that the matter was settled by the siblings.

On January 18, 2013, Judge Karen L. Suter of the Superior Court of New Jersey, Chancery Division granted McInerney's motion for instructions[3] and to allow a settlement with regard to two actions pending against the Estate arising from Decedent's law practice: IMO Estate of Farias v. Estate of Ehrlich and

---

[3] New Jersey Court Rule 4:95-2, Summary Action by Fiduciary for Instructions, provides: "A summary action pursuant to R. 4:83 may be brought by executors, administrators, guardians or trustees for instructions as to the exercise of any of their statutory powers as well as for advice and directions in making distributions from the estate."

<u>Farias v. Estate of Ehrlich</u>.  McInerney filed the motion for
instructions believing settling the matters was in the best
interest of the Estate, as he believed the Estate could
potentially be liable for more than the settlement amount.
Plaintiff opposed the motion, arguing "more information is
required before a determination of the propriety of the
settlement can be made."  Judge Suter determined McInerney was
"acting within his powers as temporary administrator" and thus
approved the settlement.  The settlement was thereafter
consummated.

On July 15, 2011, Judge Michael J. Hogan of the Superior
Court of New Jersey, Chancery Division approved McInerney's
first intermediate account on behalf of the Estate.  By a May
23, 2012 Order, Judge Suter denied Plaintiff's motion to vacate
the July 15, 2011 court order.[4]  Plaintiff appealed the denial of
his motion to vacate.  <u>In re Estate of Ehrlich</u>, 2013 WL 2476490.
The Appellate Division affirmed, stating:

---

[4]    The Appellate Division provided the following background
information regarding the underlying motion.  <u>In re Estate of
Ehrlich</u>, No. 4714-11, 2013 WL 2476490, at *1 (N.J. Super. Ct.
App. Div. June 11, 2013).  Plaintiff did not file any exceptions
to the first intermediate accounting, but after an order was
entered approving it filed a motion to remove the temporary
administrator, sought the turnover of all papers and files, and
sought an audit and investigation of the administration of the
Estate.  <u>Id.</u>  After that motion and a motion for reconsideration
were denied, Plaintiff moved to vacate the order approving the
accounting, predominantly on the grounds that the accounting
failed to include certain assets of the Estate.  <u>Id.</u>

The present case provides no basis for disturbing the July 15, 2011 order approving respondent's intermediate accounting. Appellant, by his own admission, knew the accounting to be incomplete upon his receipt of the document yet neither filed any exceptions nor voiced any objection to the accounting at the hearing on its approval. Moreover, all acknowledged that the accounting was interim in nature and that the final accounting would include the assets belatedly brought to the administrator's attention by appellant.

Id. at *1.

In a July 25, 2014 decision, Judge Mary C. Jacobson of the Superior Court of New Jersey, Chancery Division considered exceptions to a final accounting filed for Decedent's Estate, a motion seeking removal of McInerney as temporary administrator and appointment of Plaintiff as executor, and applications by McInerney and two other attorneys for fees payable from the Estate.

In the course of considering the exceptions to the accounting, Judge Jacobson considered Plaintiff's complaint that the sale price of Decedent's home was substantially less than its value as set forth in prior appraisals. Judge Jacobson found, while the property had originally been appraised around $350,000 at Decedent's death and for a couple years thereafter, Defendant had only received offers well below the original appraisal value. McInerney thus sought two updated appraisals, which determined the appraisal value had dropped to somewhere around $225,000 to $250,000, with necessary repairs

approximating over $107,000. McInerney thus sought instructions

from the court as to whether he should accept an offer of

$212,500 or make repairs to the property to try to rent it until

the market improved. After hearing Plaintiff's opposition,

Judge Suter approved and authorized the proposed sale.

Judge Jacobson concluded:

> The record reveals no action taken by Mr. Ehrlich
> to stop the sale after Judge Suter's ruling. Moreover,
> Mr. Ehrlich has presented no evidence that would allow
> this court to set aside Judge Suter's Order . . . . To
> allow Mr. Ehrlich to re-litigate this issue after the
> property has been sold in an effort to obtain a surcharge
> would be unjust and oppressive to the Temporary
> Administrator. When a fiduciary has properly applied to
> the probate court for advice and direction with respect
> to a transaction involving the administration of the
> estate and acts in accordance with the court's
> instructions, it would be inequitable to allow an
> exceptant who had an opportunity to be heard at the time
> of the application to the court for instructions to later
> pursue the same objection through an exception to the
> final accounting. By that time the Temporary
> Administrator's actions had been sanctioned by the court
> and should be given res judicata effect. To allow
> otherwise by an exceptant would create havoc in the
> administration of estates, leaving none but the
> foolhardy willing to serve as fiduciaries. Mr.
> McInerney proceeded to sell the property only after
> court approval and an opportunity for Mr. Ehrlich to be
> heard. Mr. Ehrlich's exception to the sale of the
> property must therefore be denied.

The court also addressed Plaintiff's allegation that

Defendant did not take adequate steps to locate Decedent's will

on his computer:

> Even if this claim is true, Mr. Ehrlich offers no
> explanation as to how this failure caused any loss to
> the Estate. The writing that was admitted to probate

pursuant to N.J.S.A. 3B:3-3 by Judge Hogan, who issued a Judgment to this effect that was upheld by the Appellate Division, was a paper copy of a will, unsigned by the decedent and any witnesses, but which bore a notation in the handwriting of the decedent stating, "original mailed to H.W. Van Sciver 5/20/00." . . . Because this document was admitted to probate, any failure to locate a draft of this document on the decedent's computer caused no loss to the Estate or to Mr. Ehrlich. Whether the decedent had any other draft of a different purported will on his computer and whether that different draft would have benefited Mr. Ehrlich is mere speculation. Moreover, any draft of an alleged will retrieved from the decedent's computer would lack the handwritten notation that both the chancery court and the Appellate Division relied upon in deciding that the decedent intended to constitute his will.

Also in addressing the exceptions, the state court stated Plaintiff's "numerous allegations of duplicitous conduct" by McInerney were "factually unsupportable in the record before the court." Rather, the court found McInerney "acted appropriately in bringing issues to the attention of the court for direction and presenting his accountings to the court for approval." Later in the opinion, in addressing the motion to remove McInerney as temporary administrator, the court stated: "Mr. Ehrlich has not demonstrated that there has been a flagrant dereliction of duty by the Temporary Administrator . . . ." Judge Jacobson ultimately approved the account in all respects.

In an October 30, 2015 Motion Hearing, Judge Jacobson considered a motion by McInerney seeking an order awarding attorneys' fees and costs to him, providing direction as to payment of an attorneys' fee award, and seeking direction as to

the distribution of the balance of the Estate, among other requests.  Plaintiff opposed the motion, largely based on the alleged failure of McInerney to pursue a particular asset of the Estate – a condominium titled in Decedent's name in the Harbour House Towers of Freeport in the Grand Bahamas.

McInerney certified he was not made aware Decedent had an interest in property in the Bahamas, and if he had been so aware, he would have taken action to transfer the property to the Estate.  Judge Jacobson concluded:

> The Court is not convinced that Mr. McInerney, on the basis of the record before it, was ever informed about the Bahamas property and . . . made aware that it was something he should investigate.  Jonathan Ehrlich himself had access to the decedent's files and documents.  It is throughout the record of this lengthy estate litigation that he had removed documents and files prior to Mr. McInerney's appointment as administrator. . . .
>
> . . . .
>
> N.J.S.A. 3B:17-8 provides that a judgment allowing an account after due notice shall be res adjudicata as to all exceptions which could or might have been taken to the account and shall constitute, exonerate and discharge the fiduciary from all claims of all interested parties, and the statute was relied upon by the Appellate Division in the earlier estate litigation in refusing to allow Mr. Ehrlich to raise issues as to Mr. McInerney's performance that could have been raised in the first accounting but were not . . . .
>
> Since Mr. Ehrlich was aware of the claim that the decedent owned a condominium in the Bahamas prior to the first and second accountings and failed to file an exception in this regard to either accounting the Court finds that the judgments approving both accountings constitute res adjudicata and eliminate any liability on the part of Mr. McInerney with regard to the Bahamas

property.

Similarly, in addressing McInerney's fee request, the court noted Plaintiff "claim[ed] that the Estate ha[d] been mishandled in many respects," but the court found Plaintiff's allegations meritless.[5]

## DISCUSSION

### 1.    Plaintiff's Motion for relief under Rule 60(b)

In his now-dismissed breach of fiduciary claim, Plaintiff alleged that, as a court-appointed fiduciary, McInerney "owed a common law and statutory duty of care to the beneficiaries and to the estate."  The complaint claimed that McInerney breached his fiduciary duty to Plaintiff and breached his duty, as an attorney, to comply with the Rules of Professional Conduct – specifically Rules 3.3 and 4.1.[6]  Relevant to Plaintiff's Rule 60(b) motion, Plaintiff had claimed in his complaint:

- "Mr. McInerney in contravention of his fiduciary role also severely undersold estate assets such as the decedent's home in Delanco, New Jersey.  The home was appraised at $350,000.00 but it was undersold by over $100,000.00."

---

[5] The Court notes that there were additional proceedings and issues before the state court not addressed in this Opinion. This Court recites only those proceedings, issues, and findings it finds necessary for deciding this Opinion.

[6] RPC 3.3 concerns a lawyer's candor toward the tribunal, which directs, among other things, that a lawyer should not knowingly make a false statement about a material fact, or fail to disclose a material fact, to the court.  RPC 4.1 concerns a lawyer's obligation to make truthful statements to third parties.

- "[H]e had listed for sale the decedent's law office [43 West Broad Street, Burlington, New Jersey] for $300,000 but as of 2014 he suggested in open court before Judge Jacobson that the property should be donated because it had little value."

In his Rule 60(b) motion, Plaintiff contends that testimony elicited from McInerney's deposition as a fact witness relative to Plaintiff's claims against the Realtor defendants and the Appraisal defendants revealed two new claims he could assert against McInerney, both of which he was unaware until McInerney's deposition. Plaintiff claims he only recently learned of the following:

(1) McInerney retained Defendant Thomas Sasaki of Haines & Haines who advised him immediately in a letter dated September 9, 2011 that a $300,000 listing price for the West Broadway property was too high and suggested a listing price of $169,000.00, over a 40% reduction from the appraisal of the $300,000.00. McInerney had previously sent a letter to Eric Sasaki on July 11, 2011 directing that the property be listed for $300,000 based on the appraisal that he sent to him. It remained on the market until it was sold in 2015 by Plaintiff for $64,000. Thomas Sasaki confirmed at his deposition that he gave the September 2011 advice to McInerney.

(2) Pursuant to the subpoena served upon McInerney, he provided a document dated May 2015 referencing a tax sale

certificate and an offer to redeem the tax sale certificate.

Plaintiff claims that he had no idea that McInerney was advised as early as September 2011 that the West Broad Street property was listed too high and that he was directed to reduce it to $169,000. Plaintiff claims that the property remained on the market from 2011 to 2015 at an inflated price despite McInerney being advised by a professional that he retained in 2011 that the listing was way too high. Plaintiff claims that he could not have known it prior to that time because that letter was not produced until McInerney's deposition. Plaintiff argues that this new fact suggests a new cause of action for breach of fiduciary duty that was not part of the December 2017 dismissal, and about which Plaintiff was unaware until the last several months.

Plaintiff also argues that he never knew of the tax certificate sale until it was produced in discovery in preparation for depositions, and had this been known it would have been brought up in the estate matter. Plaintiff claims that he thereafter retained a searcher to perform a tax sale search which revealed 57 properties with unresolved tax lien certificates held by the decedent. Plaintiff claims there was never an investigation into these tax sale certificates and one should be undertaken into all of these properties to see if any claims have been irretrievably lost.

The Court does not find that Plaintiff's purported new evidence warrants relief under Rule 60(b).

Rule 60(b) provides:

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

    (1) mistake, inadvertence, surprise, or excusable neglect;

    (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

    (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

    (4) the judgment is void;

    (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

    (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

As a primary matter, a Rule 60(b) motion only applies to a final judgment, order, or proceeding. The Court's December 13, 2017 dismissal of Plaintiff's claims against McInerney does not constitute a "final judgment" under Rule 60(b). See Penn West Associates, Inc. v. Cohen, 371 F.3d 118, 124–25 (3d Cir. 2004) (noting that Rule 60(b) allows a party to seek relief only from a "final judgment, order, or proceeding . . .," and the

14

application of the word "final" is clarified by the Advisory

Committee Notes, which explain that "the qualifying word 'final'

emphasizes the character of the judgments, orders or proceedings

from which Rule 60(b) affords relief; and hence interlocutory

judgments are not brought within the restrictions of the rule,

but rather they are left subject to the complete power of the

court rendering them to afford such relief from them as justice

requires"); State National Insurance Company v. County of

Camden, 824 F.3d 399, 406 (3d Cir. 2016) (explaining that Rule

60(b) grants the district court the power to relieve a party

from a "final judgment, order, or proceeding," and the district

court's order dismissing one defendant - and not all of the

defendants - was not a final order, but rather an interlocutory

order, thus making the plaintiff's Rule 60(b) motion not the

proper avenue by which to challenge the defendant's dismissal).

Thus, Plaintiff's motion for relief under Rule 60(b) is not

ripe until the Court resolves Plaintiff's claims against all

defendants.[7]  The Court, however, will consider the arguments

advanced by Plaintiff in his motion pursuant to the Court's

---

[7] McInerney points out that Plaintiff's motion for relief under
Rule 60(b)(2) is untimely.  Rule 60(c)(1) provides that a Rule
60(b) motion "must be made within a reasonable time--and for
reasons (1), (2), and (3) no more than a year after the entry of
the judgment or order or the date of the proceeding." Fed. R.
Civ. P. 60(c)(1).  Plaintiff's Rule 60(b)(2) motion cannot be
late because it is premature.

inherent authority to reconsider its prior orders.  See State National, 824 F.3d at 406 ("Apart from Rule 60(b), the District Court has the inherent power to reconsider prior interlocutory orders.").

With regard to Plaintiff's proffer of two pieces of purported "new evidence," "newly discovered evidence is '(1) material and not merely cumulative, (2) could not have been discovered prior to trial through the exercise of reasonable diligence, and (3) would probably have changed the outcome of the trial.'"  MZM Construction Company, Inc. v. New Jersey Building Laborers' Statewide Benefit Funds, 2019 WL 3812889, at *10 (D.N.J. Aug. 14, 2019) (quoting Bohus v. Beloff, 950 F.2d 919, 930 (3d Cir. 1991)) (other citations omitted).  The "new evidence" proffered by Plaintiff would not change the basis of the Court's dismissal of Plaintiff's claims against McInerney.

First, the state court squarely addressed Plaintiff's concerns regarding the pricing of the West Broad Street property.  As this Court previously found, any claims based on what the state court judge already considered are barred.  (Docket No. 31 at 21-23.)

Second, with regard to Plaintiff's claim that McInerney never conducted an investigation into the tax sale certificates of the decedent, the state court also directly addressed Plaintiff's exceptions to McInerney's accounting, and after the

surrogate audited it without exception, it approved his final
accounting.  (Id. at 22-23.)  It was therefore the province of
the state court to determine whether McInerney's accounting was
incomplete.  See N.J.S.A. 3B:7-8 (providing that a judgment
allowing an account shall be res judicata as to all parties who
received notice and as to all exceptions which could or might
have been taken to the account, and shall constitute an approval
of the correctness and propriety of the account . . . and the
legality and propriety of other matters and also shall exonerate
and discharge the fiduciary from all claims of interested
parties and of those in privity with or represented by
interested parties).

Even accepting as true Plaintiff's claim that he could not
have advanced an exception in the state court action about the
tax sale certificates because he only discovered the issue now,
Plaintiff's concern cannot be advanced here.  The state court
approved of the accounting, and any challenge to that accounting
as sanctioned by the state court must be directed to that forum.[8]

---

[8]    See N.J. Ct. R. 4:50-1 ("On motion, with briefs, and upon
such terms as are just, the court may relieve a party or the
party's legal representative from a final judgment or order for
the following reasons: (a) mistake, inadvertence, surprise, or
excusable neglect; (b) newly discovered evidence which would
probably alter the judgment or order and which by due diligence
could not have been discovered in time to move for a new trial
under R. 4:49; (c) fraud (whether heretofore denominated
intrinsic or extrinsic), misrepresentation, or other misconduct
of an adverse party; (d) the judgment or order is void; (e) the

Finally, this case does not present the extraordinary circumstances required to implicate Rule 60(b)(6) which the Court considers in exercising its inherent authority. <u>Cf</u>., <u>Buck v. Davis</u>, 137 S. Ct. 759, 777–78 (U.S. 2017) ("Rule 60(b) vests wide discretion in courts, but we have held that relief under Rule 60(b)(6) is available only in 'extraordinary circumstances.' In determining whether extraordinary circumstances are present, a court may consider a wide range of factors. These may include, in an appropriate case, the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process." (citations and quotations omitted)).

The Court will therefore decline to vacate the Opinion dismissing Plaintiff's claims against McInerney.

**2.    Realtor defendants' motion for summary judgment**

Plaintiff alleges that Defendants Thomas Sasaki and Eric Sasaki, "as professionals licensed to sell real property in New Jersey, completely and utterly miscalculated the value" and "failed to properly market" the decedent's two properties – decedent's home in Delanco, New Jersey and decedent's law office

---

judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.").

in Burlington, New Jersey ("West Broad Street property") – "in a manner than would produce the highest and best price." (Third Amended Complaint, Docket No. 44 at 8-9.) Plaintiff claims that "these defendants neglected to ensure that these properties were maintained while under their care," and the "estate suffered financially for these acts of negligence." (Id. at 9.) Plaintiff also alleges "Re/Max is liable for this negligence of Thomas and Eric Sasaki under principles of respondeat superior and agency." (Id.)

The claims against the Realtor defendants are couched somewhat differently in Plaintiff's opposition to the Realtor defendants' motion for summary judgment than they are in the Third Amended Complaint.[9] Plaintiff relates:

> The allegations asserted here are basic, clear and rather uncomplicated. The Sasaki defendants knew of germane and relevant information that they neglected to disclose on their listing, namely that the residential units couldn't be rented because of zoning changes and even if they could be, the property was in such poor shape that a Certificate of Occupancy could not be obtained. This was revealed by defendants on December 27, 2018 at their depositions. The condition of the property was clearly misrepresented in the listing.

---

[9] "'It is one thing to set forth theories in a brief; it is quite another to make proper allegations in a complaint. . . . [I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion [].'" Hughes v. United Parcel Service, Inc., 639 F. App'x 99, 104 (3d Cir. 2016) (quoting Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988)).

(Docket No. 70 at 4.)  Plaintiff further relates that he relied upon the appraisal of the West Broad Street property prepared by the Appraisal defendants that showed a net rental income in excess of $2,000 per month.  Plaintiff claims that the representation that the West Broad Street property would provide him with $2,000 per month is the basis for his damages against the Realtor defendants because he relied upon that figure when he settled his dispute with his siblings.  (Id. at 5.)

The Realtor defendants argue that Plaintiff's professional negligence claims against them as "professionals licensed to sell real property in New Jersey" fail because without proffering an expert as to how they deviated from a real estate agent's duty of care, Plaintiff cannot prove they breached that duty.  Plaintiff argues that he does not need an expert to prove his claims, because under the common knowledge exception, he can testify as to defendants' breach and how that breach caused his damages.

The Realtor defendants are correct that Plaintiff's theory against them requires the testimony of an expert.  In order to maintain a negligence claim against a licensed professional, a plaintiff is ordinarily required to provide an affidavit of merit from an expert – an "appropriate licensed person" – at the outset of the case to make a threshold showing that their claim is meritorious.  See N.J.S.A. 2A:53A-27 ("In any action for

damages for personal injuries, wrongful death or property damage

resulting from an alleged act of malpractice or negligence by a

licensed person in his [or her] profession or occupation, the

plaintiff shall, ... provide each defendant with an affidavit of

an appropriate licensed person that there exists a reasonable

probability that the care, skill or knowledge exercised or

exhibited in the treatment, practice or work that is the subject

of the complaint, fell outside acceptable professional or

occupational standards or treatment practices."); Meehan v.

Antonellis, 141 A.3d 1162, 1169 (N.J. 2016) ("The submission of

an appropriate affidavit of merit is considered an element of

the [professional negligence] claim.  Failure to submit an

appropriate affidavit ordinarily requires dismissal of the

complaint with prejudice.").

Plaintiff's claim that the listing should have included

more information, or any information at all, about potential

impediments to lease income is precisely the kind of information

that calls for an assessment of industry practice beyond the

"ordinary understanding and experience" of lay persons.

Accordingly, it falls outside of the category of obvious errors

the common knowledge exception was meant to address.  See Cowley

v. Virtua Health System, 193 A.3d 330, 337 (N.J. Super. Ct. App.

Div. 2018) ("Common knowledge cases involve obvious or extreme

error."); Bender v. Walgreen Eastern Co., Inc., 945 A.2d 120,

123 (N.J. Super. Ct. App. Div. 2008) (explaining that the common knowledge doctrine has been used in circumstances involving obvious errors: a dentist's extraction of the wrong tooth, the erroneous hookup of equipment that resulted in the pumping of gas, rather than the fluid that ought to have been used, into the patient's uterus, and the use of caustic solution, rather than the soothing medication intended, to treat a patient's nose after surgery).

Plaintiff's failure to proffer an expert to testify to a factfinder how the alleged failure to provide such information in a real estate listing deviates from the applicable standard of care is therefore fatal to his claim. Cowley, 193 A.3d at 336 ("Expert testimony about an alleged deviation from a reasonable standard of care [and to establish breach of that standard] is required whenever a licensed person exercised professional responsibilities and judgment before acting or failing to act[].") (citation omitted); see also Katz v. N.T. Callaway Real Estate Broker, LLC, 2016 WL 6677897, at *7 (N.J. Super. Ct. App. Div. 2016) (not finding fault with the trial court's dismissal of the plaintiff's negligence claim against a real estate broker because she failed to obtain an expert opinion on the responsibilities and functions of real estate brokers).

It is true that under the common knowledge exception, a plaintiff is not required to provide an expert to support his

negligence claims.  See Buttacavoli v. Universal Dentistry, PA, 2019 WL 2184960, at *4 (N.J. Super. Ct. App. Div. 2019) (explaining that "the New Jersey Supreme Court has recognized an exception to the affidavit requirement in professional negligence cases in which it is not necessary for plaintiff to present an expert to establish the standard of care or a deviation from that standard: the common knowledge exception. In common knowledge cases, the alleged negligence is unrelated to technical matters peculiarly within the knowledge of practitioners within the defendant's field.  Common knowledge cases are thus treated as ordinary negligence actions in which the jury can supply the applicable standard of care from its fund of common knowledge and assess the feasibility of possible precautions which the defendant might have taken to avoid injury to the plaintiff." (citations omitted)).  But even if the Court assessed Plaintiff's claims against the Realtor defendants under the ordinary negligence standard, the Court finds that Plaintiff has not met his burden to defeat summary judgment.[10]

---

[10]    Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

"In New Jersey, as elsewhere, it is widely accepted that a negligence cause of action requires the establishment of four elements: (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." <u>Jersey Cent. Power & Light Co. v. Melcar Utility Co.</u>, 59 A.3d 561, 571 (N.J. 2013).

As set forth above, the nature of Plaintiff's claims against the Realtor defendants is unclear.  In his complaint, Plaintiff alleges that Thomas Sasaki and Eric Sasaki were negligent in the real estate listings for the Delanco property and the West Broad Street property because they did not maximize the highest selling price, and that their negligent listing resulted in financial injury to the estate.

As noted above, Plaintiff improperly changes the nature of his claim against the Realtor defendants asserting that they were negligent in their listing of the West Broad Street property because they failed to disclose that the residential units could not be rented because of zoning changes and were in such poor condition that a Certificate of Occupancy could not be obtained.  Plaintiff does not make any argument as to the Delanco property.

Thus, on the one hand, Plaintiff alleges that the Realtor defendants created a listing that would not garner the highest possible sale price for the two properties, but on the other

hand, Plaintiff claims that the Realtor defendants created a listing for the West Broad Street property that did not include specifics about the disrepair of the property, which would logically lead to a lower sale price.

Plaintiff's contradictory claims are further confused by the alleged nature of Plaintiff's damages. Plaintiff claims that he relied upon the appraisal for $2,000 per month in rental income from the West Broad Street property when he settled his dispute with his siblings, but he offers no evidence as to how such reliance affected those negotiations and if so in what amount. Even if the Court were to allow Plaintiff to proceed on this new theory, and even assuming the Realtor defendants owed a duty of care to a beneficiary of the estate rather than to the estate that hired them, a factfinder would have to speculate on what damages, if any, Plaintiff suffered. An inability to prove damages regarding the statements concerning the condition of the West Broad Street property is fatal to his negligence claim against the Realtor defendants.

The same holds true for Plaintiff's claims against the Realtor defendants for not crafting listings for the Delanco property and the West Broad Street property to maximize their sale price. Again, accepting that the Realtor defendants had a duty of care to Plaintiff and they breached that duty, Plaintiff has not provided any proof with regard to his damages that were

caused by these listings.  Plaintiff's negligence claim against the Realtor defendants for their alleged failure to maximize the sale price in the listings of the two properties is unsustainable as well.

Consequently, the Realtor defendants are entitled to judgment in their favor on Plaintiff's negligence claims.[11]

### 3.  Appraisal defendants' motion for summary judgment

Plaintiff claims the following against the Appraisal defendants:

> The defendant Sasaki employed appraisers to appraise the subject properties.  Those appraisers were Martin T. O'Hara the owner /operator of O'Hara Appraisals.  Three appraisals were done on the Delanco property.  A date of death value of $350,000, 00 and a tax appraisal of $340,000.00 and a third appraisal of $225,000.00, which listed work that needed to be done on the home.  If such work needed to be done on the home, that existed when the first two appraisals were completed.

> The appraisal of the Delanco property was done negligently, unprofessionally and carelessly so that the estate incurred needless carrying charges and fees.

> Likewise the appraisal of the law office of the decedent in the amount of $300,000.00 was so high that it clearly discouraged any real offers on the property and the

---

[11] Plaintiff asserts claims under respondeat superior and agency against Re/Max World Class Realty for the actions of Thomas Sasaki and Eric Sasaki.  Re/Max argues that Plaintiff's claims against it must be dismissed because it had no involvement in this matter.  Thomas Sasaki and Eric Sasaki were employed by Haines & Haines during these events, and Re/Max did not come into existence until after the properties had been sold (the Delanco property in 2012, and the West Broad Street property in March 2015).  Plaintiff did not file any response to Re/Max's argument.  Summary judgment is warranted in favor of Re/Max on this basis as well.

estate incurred carrying charges needlessly. The office was sold by Jonathan Ehrlich for a small fraction of what it was appraised for.

As proximate cause of the negligence of Martin O'Hara and O'Hara Appraisals, Plaintiff suffered damages.

(Docket No. 44 at 9-10.)

The Appraisal defendants have moved for summary judgment on the same basis as the Realtor defendants - that Plaintiff cannot establish liability and damages against them for their alleged professional negligence because he has not produced an expert to support the elements of his claims.

The Court first notes that Plaintiff did not file an opposition to the Appraisal defendants' motion. In an unopposed motion, a movant who files a proper Local Civil Rule 56.1 statement of undisputed material facts ("SUMF") receives the benefit of the assumption that such facts are admitted for purposes of the summary judgment motion. <u>Lacroce v. M. Fortuna Roofing, Inc.</u>, 2017 WL 431768, at *3 (D.N.J. 2017) (citing L. Civ. R. 56.1 (providing that "any material fact not disputed shall be deemed undisputed for the purposes of the summary judgment motion")). Thus, "where a properly filed and supported summary judgment motion is unopposed, it would be an exceptional case where the court concludes that summary judgment should nonetheless be denied or withheld, although the Court has discretion to do so if unsatisfied that the law and facts point

to judgment as a matter of law." Id.

The Appraisal defendants appropriately complied with Local Civil Rule 56.1, and the Court finds that they are entitled to summary judgment in their favor on Plaintiff's claims against them for the same reasons as the Realtor defendants. Not only has Plaintiff failed to proffer expert testimony to show that the Appraisal defendants breached the duty of care for licensed professional real estate appraisers, Plaintiff has not provided any proof as to how the Appraisal defendants caused Plaintiff damages, even if the Court were to construe his claim to be for ordinary negligence rather than malpractice.

Plaintiff claims in his complaint that the appraisals of the two properties were done negligently resulting in the estate incurring unnecessary carrying charges and fees. Assuming the Appraisal defendants had a duty of care to Plaintiff – despite the fact that McInerney hired Haines and Haines, who then hired the Appraisal defendants – and the Appraisal defendants breached that duty, Plaintiff has provided no evidence to support his claim that he or the estate has suffered damages. Consequently, the Appraisal defendants are entitled to summary judgment in their favor on Plaintiff's claims against them.

## CONCLUSION

The Court will deny Plaintiff's motion to vacate the December 13, 2017 Opinion. The Court will grant the Realtor

defendants' and the Appraisal defendants' motions for summary

judgment.  An appropriate Order will be entered.


Date:  <u>September 30, 2019</u>        <u>s/ Noel L. Hillman</u>
At Camden, New Jersey        NOEL L. HILLMAN, U.S.D.J.